UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Faculty, Alumni, and Students Opposed to Racial Preferences (FASORP)**, | |
| Plaintiff, | Case No. 1:25-cv-01129 |
| v. | Judge Sara L. Ellis |
| **Northwestern University**, et al., | |
| Defendants. | |

## DECLARATION OF JONATHAN F. MITCHELL

**1.** My name is Jonathan F. Mitchell. I am over the age of 18 and fully competent in all respects to make this declaration.

**2.** I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

**3.** I represent the plaintiff in this litigation, and I submit this declaration in response to the defendants' motion to recover court costs under Rule 41(d) (ECF No. 17).

**4.** On March 24, 2025, at 2:00 p.m., I conferred with Jude Volek, counsel for the defendants, by videoconference for over 30 minutes. During this conference, I explained to Mr. Volek in detail why I decided to dismiss our action under Rule 41(a)(1)(A)(i) and refile, rather than proceed with the in-person hearing on our motion for leave to amend that this Court had scheduled for February 5, 2025.

**5.** I told Mr. Volek that I had two reasons for dismissing and refiling. The first reason was that dismissing and refiling would spare both sides the time and expense of traveling to an in-person hearing in Chicago and preparing for and attending that hearing on our motion for leave to amend, and that all of these costs would be obviated if I simply dismissed the action under Rule 41(a)(1)(A)(i) and refiled. I also told Mr. Volek that I believed that the

savings to each side from avoiding the need for an in-person hearing in Chicago would dwarf any added costs that might be imposed by the dismiss-and-refile maneuver. For example, I knew that my client would have to pay a second filing fee of $405.00, a second round of pro hac vice admission fees for my co-counsel, as well as court costs under Rule 41(d) if the defendants requested them. But these total costs would amount to hundreds of dollars or (at most) slightly more than $1,000.00. By contrast, it would have cost my client approximately $10,000.00 in fees and travel costs if I had gone ahead with the in-person hearing that this Court had scheduled for February 5, 2025.

6. I also told Mr. Volek that I was certain that the savings to his client from avoiding fees and travel costs for the hearing in Chicago would exceed any costs imposed by our decision to dismiss and refile. The defendant's lawyers are based in Washington, D.C., not Chicago, and they work at an elite law firm that bills at very high hourly rates. The costs of flying a team of lawyers from Latham & Watkins's D.C. office to Chicago, as well the fees that would be incurred by having a team of Latham & Watkins lawyers prepare for and attend the hearing, would amount to tens of thousands of dollars. A decision to dismiss the case and re-file would require the defendants to incur another round of pro hac vice admissions fees, and a few hours of attorney time to put a new case number on their previously filed motion to dismiss and change a few of the citations of paragraph numbers that no longer match the numbering in our newly filed complaint. I told Mr. Volek that I could not imagine a scenario in which our decision to dismiss and refile would cost rather than save his client money.

7. Near the end of our videoconference, I told Mr. Volek my second reason for dismissing and refiling rather than attending the in-person hearing that this Court had scheduled for February 5, 2025: ███████████

████████████████████████

████████████████████████

████████████████████████

8. █████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

9. I was hoping that the Court would decide the motion for leave to amend on the papers, and the Court indicated at the hearing of January 14, 2025, that this was a possibility. But when Ms. Johnson confirmed over e-mail that the in-person hearing would proceed as scheduled on February 5, 2025, I decided that I should dismiss and refile rather than embark on a two-day business trip that would ███████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

10. Mr. Volek did not contest the veracity of my stated motivations for dismissing and refiling during our meet-and-confer session. Near the end of the conference, I asked Mr. Volek if I had "persuaded" him that my motivations for dismissing and refiling were "not vexatious." Mr. Volek did not provide a straight answer to this question, but he did not accuse me of lying or claim that he had reason to doubt that my stated motivations were my actual reasons for dismissing and refiling.

11. I told Mr. Volek during our conference call that I would willingly pay any court costs that his client incurred in No. 24-5558. I also told Mr. Volek that if I was wrong in believing that our decision to dismiss and refile would save his client money, then he should send me documentation of the costs and fees that I compelled his client to incur on account of the dismissal-and-refile maneuver. I told him that if those costs and fees are reasonably incurred

and exceed what I regard as a reasonable estimate of fees and travel costs that I saved his client by obviating the need for an in-person hearing in Chicago on February 5, 2025, then I would willingly pay the difference. Neither Mr. Volek nor his co-counsel has sent any such documentation in response to this invitation.

12.     I continue to believe that the fees and travel costs that the defendants avoided by not having to send their lawyers to an in-person hearing in Chicago on February 5, 2025, exceed any additional costs and fees that the defendants will be forced to spend because of our decision to dismiss and refile.

13.     Despite listening to my explanation for our dismissal and refiling during our 30-minute meet-and-confer session, and knowing full well that my motivations for dismissing and refiling were to save both sides time and money and to avoid a two-day trip to Chicago that would ██████████████████████████████████████████████, the defendants have nonetheless submitted a court filing that describes our dismissal-and-refiling as "gamesmanship," "manipulative," "bad-faith," and "vexatious." They also claim that I dismissed and refiled to "gain a tactical advantage" and "avoid a potentially adverse ruling." All of these accusations are false and defamatory.

14.     I did not dismiss and refile to "gain a tactical advantage." I knew that I could add the Title VII claim to this case regardless of how this Court ruled on our motion for leave to amend. If the Court had denied our motion for leave to amend after holding the in-person hearing that it had scheduled for February 5, 2025, then I would have dismissed our action without prejudice under Rule 41(a)(1)(A)(i) and filed a new lawsuit that includes the Title VII claim. And if the defendants had staved off this maneuver by answering our complaint before I could unilaterally dismiss under Rule 41(a), then I would have added the Title VII claim by filing a separate lawsuit alleging violations of Title VII and then moving to consolidate that lawsuit into No. 24-5558. *See* Fed. R. Civ. P. 42(a)(2); *see also* Pl.'s Reply Br. in Support of Mot. for Leave to File Second Am. Compl., *FASORP v. Northwestern University, et al.*, No. 1:24-cv-05558 (N.D. Ill.), ECF No. 49, at 12–13 (explaining how "a ruling from this Court that denies

leave to amend would be pointless because FASORP can file a separate Title VII lawsuit against Northwestern and then move to consolidate that lawsuit with this case under Rule 42(a)(2).").

15. There was no "tactical advantage" to be gained by dismissing and refiling before the in-person hearing that had been scheduled for February 5, 2025, because the Title VII claim was going to be added to this case one way or another, and I knew full well that I could (and would) add the Title VII claim no matter how this Court ruled on our motion for leave to amend. Nor did I believe that there was any "tactical advantage" to be gained by dismissing and refiling before the hearing, because the only issue to be decided was *how* the Title VII claim would be added to the case, not *whether* that claim would be added. My only motivations for dismissing and refiling before the hearing were what I explained to Mr. Volek during our meet-and-confer: (1) I concluded that dismissal-and-refiling would be the least expensive option for both sides after Ms. Johnson informed me over e-mail that the Court intended to proceed with an in-person hearing on February 5, 2025; and (2) ███████████████████████████████████████████████████████████████████████████████████

16. Nor did I dismiss and refile "to avoid a potentially adverse ruling." I did not fear and had no reason to fear a ruling from this Court that denied our motion for leave to file a second amended complaint. If the Court had denied our motion for leave to amend, then I would have added the Title VII claim to the lawsuit by dismissing our action without prejudice under Rule 41(a)(1)(A)(i) and filing a new lawsuit that includes the Title VII claim. And if the defendants had blocked this course of action by answering our complaint before I could dismiss and refile, then I would have added the Title VII claim by filing a separate lawsuit alleging violations of Title VII and then moving to consolidate that lawsuit into No. 24-5558. *See* Fed. R. Civ. P. 42(a)(2); *see also* Pl.'s Reply Br. in Support of Mot. for Leave to File Second Am. Compl., *FASORP v. Northwestern University, et al.*, No. 1:24-cv-05558 (N.D. Ill.), ECF No. 49, at 12–13.

17. I also expected the court to grant our motion for leave to amend if we proceeded with the in-person hearing that was scheduled for February 5, 2025—although I was not entirely certain that it would, hence the contingency plan for dismissal-and-refiling in the event of an adverse ruling. The Court also confirmed at our telephone hearing of February 19, 2025, that it would have granted the motion for leave to amend if we had proceeded with the in-person hearing on February 5, 2025. But I was not expecting an adverse ruling from the Court on our motion for leave to amend, and I did not dismiss and refile to avoid an adverse ruling on that motion. More importantly, an adverse ruling on the motion for leave to amend would not have stopped us from adding the Title VII claim by dismissing and refiling or by filing a separate Title VII lawsuit and moving to consolidate that lawsuit into No. 24-5558. Again, my *only* motivations for dismissing and refiling were: (1) To save both sides the fees and travel costs of an in-person hearing in Chicago; and (2) █████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████

18. The defendants' efforts to characterize our dismissal and refiling as "gamesmanship," "manipulative," "bad-faith," and "vexatious" are also false and defamatory. These are accusations that go to a lawyer's subjective state of mind, and the defendants know full well from our meet-and-confer session that I believed that a dismissal and refiling would save *both* sides money because I thought that the fees and travel costs associated with the in-person hearing would exceed any added costs or fees that would be imposed by a dismissal-and-refiling. I also told Mr. Volek that if I was mistaken to hold that belief, either because I underestimated the costs and fees imposed by our dismissal and refiling or because I overestimated the fees and travel costs of sending a team of D.C.-based Latham & Watkins lawyers to an in-person hearing in Chicago, then I would willingly pay the difference if the defendants could provide the necessary documentation.

19. It is neither "bad faith" nor "vexatious" for a lawyer to dismiss and refile if he sincerely believes that this is the least expensive and least burdensome way of effectuating an

amendment to his pleading—even if that belief turns out to be mistaken. And it certainly cannot be "vexatious" when the lawyer *offers to reimburse* his opposing litigant for the net fees and costs that the dismissal and refiling imposed in the event that this maneuver wound up costing rather than saving the other side money.

20. There is also no "gamesmanship" or "manipulative" conduct involved when an attorney effectuates an amendment to his pleading through the method that he believes will impose the least amount of costs on his client and his opposing litigants. There were three ways by which we could have added our Title VII claim to this case: (1) Amend the complaint under Rule 15(a) by obtaining leave of court or the defendants' written consent; (2) Voluntarily dismiss the action under Rule 41(a)(1)(A)(i) and refile; or (3) File a separate lawsuit asserting the Title VII claims and move to consolidate that lawsuit under Rule 42(a)(2). I initially believed that Rule 15(a) presented the easiest and least expensive way to add the Title VII claims, because courts are instructed to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). I also expected that the motion would be easy to write and that the Court would grant our quickly without a hearing. I filed our motion for leave to amend on January 10, 2025, and the defendants filed their brief in opposition on January 13, 2025.

21. It was not until January 14, 2025, when the Court notified the parties that it intended to hold an in-person hearing on our motion for leave to amend on February 5, 2025, that I began to consider the possibility of dismissing and refiling as a quicker and less expensive way to add the Title VII claim to the case. The Court mentioned at our telephone hearing on January 14, 2025, that it might nonetheless decide the motion on the papers without the need for a hearing, so I decided to wait and see if the Court would rule on the papers before dismissing and refiling, as the briefing on the motion for leave to amend was nearly complete. I also wanted to wait and see if ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

22. When Ms. Johnson informed me on January 28, 2025, that the Court would proceed with an in-person hearing, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ I was almost certain that it would also save the defendants money because the fees and travel costs associated with flying a team of high-priced D.C.-based lawyers to Chicago for an in-person hearing would exceed any added fees or costs that a dismissal and refiling would impose on the defendants. We both agreed that I should dismiss and refile, rather than attend the in-person hearing in Chicago, as long as I could do so consistent with ethical practice.

23. I carefully researched the law before dismissing and refiling and consulted with one of my most trusted friends who is an experienced and highly successful trial attorney. My friend assured me that dismissing and refiling is an acceptable and ethical method for amending a pleading before the other side has filed its answer, but he warned me to avoid any appearance of judge shopping and to mark on the civil cover sheet that the case had been previously filed and assigned to Judge Ellis.

24. I made sure to dispel any possible appearance of judge shopping on the civil cover sheet in No. 25-1129 by noting that this case was a refiling of our "previously dismissed" action in No. 24-5558, and I specifically mentioned Judge Ellis by name to ensure that the clerk's office would assign No. 25-1129 to Judge Ellis. If the clerk's office had assigned No. 25-1129 to a different judge notwithstanding the information on the civil cover sheet, then I would have called the clerk's office to inform them of the previous action in No. 24-5558 and to request an immediate reassignment to Judge Ellis. I am aware that judge shopping is an unethical practice and that lawyers have been sanctioned for engaging in such tactics. *See Boe v. Marshall*, --- F. Supp. 3d ----, No. 2:22-CV-184-LCB, 2025 WL 602564 (M.D. Ala. Feb. 25,

2025). I took every step to ensure that our dismissal and refiling would not be construed as an effort to obtain a different judge.

25. I also researched Rule 41(d) and the relevant case law in the Seventh Circuit. I read *Esposito v. Piatrowski*, 223 F.3d 497 (7th Cir. 2000), which holds that the reference to "costs" in Rule 41(d)(1) excludes attorneys' fees, and that attorneys' fees cannot be recovered under Rule 41(d) unless our original filing in No. 24-5558 was "frivolous, unreasonable, or groundless." *Id.* at 500–02. I also read *Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000) (unpublished opinion), which allows district courts to order payment of fees when a litigant has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." I knew that our dismissal and refiling was not being done "in bad faith, vexatiously, wantonly, or for oppressive reasons," as my sole motivations for dismissing and refiling were to save both sides the time and expense of an in-person hearing in Chicago and to avoid ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. I also knew that our original filing in No. 24-5558 was not "frivolous, unreasonable, or groundless," and that the defendants would not be able to use our refiling of the lawsuit as a means for recovering fees under 42 U.S.C. § 1988.

26. The only "costs" that I could have imagined owing to the defendants under Rule 41(d) would be the pro hac vice application fees that they incurred in No. 24-5558. But my research uncovered *Canter v. AT&T Umbrella Benefit Plan No. 3*, 33 F.4th 949, 959 (7th Cir. 2022), which holds that pro hac vice application fees are not recoverable as court costs in the Seventh Circuit. So I expected the "costs" under Rule 41(d) to be zero, although I do not mind reimbursing the defendants for the second round of pro hac vice application fees that our dismissal and refiling forced them to incur even though they are not entitled to recover them as "costs" under Rule 41(d).

27. The defendants are also accusing me of "vexatious" and "bad faith" conduct because I reasserted the Title IX faculty-hiring claim and our claims against the individual defendants in No. 25-1129 after conceding that those claims were foreclosed by Seventh Circuit precedent in No. 24-5558. *See* Defs.' Rule 41(d) Motion, ECF No. 17, at 1–2, 9–11. The defendants'

accusation is false and defamatory. I reasserted those claims in No. 25-1129, despite knowing that they are currently foreclosed by Seventh Circuit precedent, because I want to preserve those issues for appeal and have the option of asking the en banc Seventh Circuit or the Supreme Court to overrule those adverse precedents. The defendants know this because we said it in our response to their motion to dismiss. *See FASORP v. Northwestern University, et al.*, No. 1:24-cv-05558 (N.D. Ill.), ECF No. 42, at 25 ("FASORP acknowledges that *Waid* [*v. Merrill Area Public Schools*, 91 F.3d 857 (7th Cir. 1996),] remains binding precedent in this Court, *although it wishes to preserve for appeal its contentions that* Waid *should be considered or overruled.*" (emphasis added)). If I had omitted these claims from No. 25-1129, then they would be deemed waived and we would be unable to seek reversal of the adverse precedents before the en banc Seventh Circuit or the Supreme Court. Litigants are permitted to bring claims in federal district court that are foreclosed by existing precedent if they wish to preserve their ability to have the adverse precedent reconsidered or overruled on appeal. This is not sanctionable conduct, nor is it "frivolous, unreasonable, or groundless," so long as the litigant candidly acknowledges the adverse precedent and asks the district court to follow it — which we did in No. 24-5558 and will do again in No. 25-1129.

28. The defendants raise the prospect that we might once again amend our complaint as of right under Rule 15(a)(1), which would force the defendants to prepare a fourth motion to dismiss. *See* Defs.' Rule 41(d) Motion, ECF No. 17, at 7. I have no intention of doing this, and I cannot imagine a scenario in which I would seek to amend the newly filed complaint. The complaint in No. 25-1129 is nearly identical to the first amended complaint, with the exception of the newly added Title VII claim. So I expect the defendants to submit a motion to dismiss that largely mirrors their previously filed motion to dismiss in No. 24-5558. I did not dismiss and re-file to obtain another free amendment under Rule 15(a)(1). I dismissed and refiled to save both sides the costs and expenses of an in-person hearing in Chicago, and to

███████████████████████████████████████████████████████████████████████.

29. The defendants also claim that I acted "vexatiously" and in "bad faith" because I waited until Ms. Johnson confirmed on January 28, 2025, that the in-person hearing would go forward before dismissing and refiling—and they accuse me of forcing them to spend time preparing a response to my motion for leave to amend that could have been avoided if I had simply dismissed and refiled without ever filing a motion for leave under Rule 15(a)(2). These accusations are also false and defamatory. As explained earlier, I initially believed that Rule 15(a) presented the easiest and least expensive way to add the Title VII claim to this lawsuit, and when I filed the motion on January 10, 2025, I had no reason to believe that the Court would hold an in-person hearing that would require both sides to travel to Chicago. The defendants filed their opposition to the motion on January 13, 2025—one day *before* the Court informed us at the telephone hearing of January 14, 2025, that it would hold an in-person hearing on the motion. The Court also mentioned at the hearing of January 14, 2025, that it might decide the motion on the papers, so I waited to see if the Court would rule on the papers and cancel the in-person hearing scheduled for February 5, 2025. It was only when Ms. Johnson informed me by e-mail on January 28, 2025, that the in-person hearing would go forward that it became apparent that it would be easier, less expensive, and less burdensome on my family to dismiss the lawsuit and refile rather than proceed with the in-person hearing in Chicago. The defendants' claim that I "forced" them to "waste time and money on a motion" is also false because the defendants had already submitted their response to our motion before the district court announced its intention to hold an in-person hearing, and they did not incur any additional time briefing the motion between January 14, 2025—the date on which the Court informed the parties that it would likely hold an in-person hearing on the motion—and January 31, 2025, the date on which FASORP voluntarily dismissed its complaint.

30. It is beyond disappointing that defendants' counsel would accuse me of bad-faith conduct after I had carefully explained my reasons for dismissing and refiling during our 30-minute meet-and-confer session. At no point during our conference did Mr. Volek claim or

suggest that I was lying or that he had reasons to disbelieve my stated motivations. I would never accuse another lawyer of bad-faith conduct in a court filing unless I was certain that there was no other possible explanation for the attorney's actions. The defendants' counsel have not only made a false accusation of bad faith, but they did so after a lengthy meet-and-confer session in which I had clearly communicated my reasons for dismissing and refiling the action.

This concludes my declaration. I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 1, 2025

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL