**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES (FASORP), | |
| Plaintiff, | Case No. 25-cv-1129 |
| v. | District Judge Sara L. Ellis |
| NORTHWESTERN UNIVERSITY; HARI OSOFSKY, in her official capacity as dean of Northwestern University School of Law; SARAH LAWSKY, JANICE NADLER, AND DANIEL RODRIGUEZ, in their official capacities as professors of law at Northwestern University; DHEVEN UNNI, in his official capacity as editor in chief of the Northwestern University Law Review; JAZMYNE DENMAN, in her official capacity as senior equity and inclusion editor of the Northwestern University Law Review, | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................3

     A.     The Parties ...........................................................................................3
     B.     Faculty Hiring At The Law School..........................................................4
     C.     Law Review Member And Editor Selection ...........................................5
     D.     Law Review Article Selection ...............................................................5

LEGAL STANDARD .............................................................................................6

ARGUMENT ..........................................................................................................7

I.      FASORP LACKS ARTICLE III STANDING. .................................................7

     A.     FASORP Lacks Standing To Challenge The Law School's Faculty Hiring. ..........7
     B.     FASORP Lacks Standing To Challenge The Law Review's Member And Editor Selection.............................................................................13
     C.     FASORP Lacks Standing To Challenge The Law Review's Article Selection..........................................................................................14

II.     FASORP FAILS TO STATE A CLAIM ON THE MERITS. ...........................15

     A.     The Claims Against The Individual Defendants Should Be Dismissed. ...............15
     B.     FASORP Fails To State A Title VI Claim Against Any Defendant.....................16
     C.     FASORP Fails To State A Title IX Claim Against Any Defendant.....................22
     D.     FASORP Fails To State A Title VII Claim Against Any Defendant. ..................23
     E.     FASORP Fails To State A Section 1981 Claim Against Any Defendant. ............25

CONCLUSION.......................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agbefe v. Bd. of Educ. of Chi.*,
    538 F. Supp. 3d 833 (N.D. Ill. 2021) ...............................................................16, 22

*Ahern v. Bd. of Educ. of Chi.*,
    133 F.3d 975 (7th Cir. 1998) ..........................................................................16, 18

*Alameda v. Ass'n of Soc. Work Bds.*,
    2024 WL 4302389 (S.D.N.Y. Sept. 25, 2024)........................................................28

*Apex Digit., Inc. v. Sears, Roebuck & Co.*,
    572 F.3d 440 (7th Cir. 2009) ...............................................................................6

*Arnold v. Boatmen's Nat. Bank of Belleville*,
    89 F.3d 838 (7th Cir. 1996) ................................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................3

*Barnes v. Solo Cup Co.*,
    2013 WL 2156054 (N.D. Ill. May 16, 2013) .........................................................26

*Barnes-Staples v. Carnahan*,
    88 F.4th 712 (7th Cir. 2023) ...............................................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................6

*Bennett v. Roberts*,
    295 F.3d 687 (7th Cir. 2002) ..............................................................................23

*Box v. A & P Tea Co.*,
    772 F.2d 1372 (7th Cir. 1985) .............................................................................10

*Brown v. Ferrara Candy Co.*,
    2023 WL 6519973 (N.D. Ill. Oct. 5, 2023)...........................................................26

*Brown v. Ill. Dep't of Hum. Servs.*,
    717 F. App'x 623 (7th Cir. 2018) ........................................................................22

*Burton v. Great W. Steel Co.*,
    833 F. Supp. 1266 (N.D. Ill. 1993) ......................................................................25

*C.S. v. Couch*,
   843 F. Supp. 2d 894 (N.D. Ind. 2011) ................................................................15

*Carney v. Adams*,
   592 U.S. 53 (2020) ....................................................................................7, 8

*Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*,
   741 F.3d 769 (7th Cir. 2013) ...........................................................................3

*Chuang v. Regents of Univ. of Cal.*,
   1998 WL 1671745 (E.D. Cal. Oct. 30, 1998), *rev'd on other grounds, Chuang
   v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d 1115 (9th Cir. 2000) ...........................18

*Cieslik v. Bd. of Educ. of Chi.*,
   2021 WL 1172575 (N.D. Ill. Mar. 29, 2021)........................................................19

*Collier v. Rodriguez*,
   1996 WL 535326 (N.D. Ill. Sept. 18, 1996) .......................................................28

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
   589 U.S. 327 (2020)........................................................................26, 27, 28

*Consolidated Rail Corp. v. Darrone*,
   465 U.S. 624 (1984)....................................................................................18

*Dixon v. Page*,
   291 F.3d 485 (7th Cir. 2002) ...........................................................................6

*Doe v. Columbia. Coll. Chi.*,
   933 F.3d 849 (7th Cir. 2019) .........................................................................23

*Doe v. N.Y.U.*,
   2024 WL 2847368 (S.D.N.Y. May 30, 2024) ...................................12, 13, 14, 20

*Doe v. St. Joseph's Hosp. of Ft. Wayne*,
   788 F.2d 411 (7th Cir. 1986), *overruled on other grounds by Alexander v.
   Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996)..................................16, 17

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006)....................................................................................28

*Earle Asphalt Co. v. Cnty. of Camden*,
   2023 WL 8711815 (3d Cir. Dec. 18, 2023) ..........................................................8

*EEOC v. Concentra Health Servs., Inc.*,
   496 F.3d 773 (7th Cir. 2007) ...........................................................................6

…

*Ezekiel v. Michel*,
    66 F.3d 894 (7th Cir. 1995) ..................................................................................6

*FASORP v. Harv. L. Rev. Ass'n*,
    2019 WL 3754023 (D. Mass. Aug. 8, 2019) ................................................ *passim*

*FASORP v. N.Y.U. L. Rev.*,
    11 F.4th 68 (2d Cir. 2021) .....................................................................10, 13, 15

*FASORP v. N.Y.U. L. Rev.*,
    2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020), *aff'd*, 11 F.4th 68 (2d Cir.
    2021) ...........................................................................................1, 9, 13, 21

*FASORP v. Northwestern Univ.*,
    No. 24-cv-5558 (N.D. Ill. Jul. 2, 2024)................................................................1

*Gabrielle M. v. Park Forest-Chicago Heights Sch. Dist. 163*,
    315 F.3d 817 (7th Cir. 2003) ...............................................................................23

*Gress v. RTA*,
    2018 WL 3869962 (N.D. Ill. Aug. 15, 2018) .......................................................19

*Holder v. Old Ben Coal Co.*,
    618 F.2d 1198 (7th Cir. 1980) ........................................................................24, 25

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y. 2014)....................................................................10

*Hummel v. St. Joseph Cnty. Bd. of Comm'rs*,
    817 F.3d 1010 (7th Cir. 2016) .........................................................................8, 10

*Ivens v. GK N. Childcare Corp.*,
    2022 WL 602913 (N.D. Ind. Mar. 1, 2022) ........................................................26

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
    996 F.3d 802 (7th Cir. 2021) ..........................................................................14, 23

*Jones v. Michael Reese Hosp.*,
    1991 WL 105583 (N.D. Ill. June 7, 1991) ...........................................................26

*Lewis v. Ind. Wesleyan Univ.*,
    36 F.4th 755 (7th Cir. 2022) ...............................................................................26

*Livingston v. City of Chicago*,
    2024 WL 245214 (N.D. Ill. Jan. 22, 2024) (Ellis, J.) ...........................................11

*Lowery v. Tex. A&M Univ.*,
    2024 WL 4614714 (5th Cir. Oct. 30, 2024)...........................................................9

*McDonald v. Santa Fe Trail Transp. Co.*,
    427 U.S. 273 (1976).................................................................................25

*Melendez v. Ill. Bell Tel. Co.*,
    79 F.3d 661 (7th Cir. 1996) ...........................................................10, 11

*Meyerson v. State of Ariz.*,
    709 F.2d 1235 (9th Cir. 1983), *judgment vacated*, 465 U.S. 1095 (1984) ...........................18

*Miller v. Phelan*,
    845 F. Supp. 1201 (N.D. Ill. 1993) ................................................17

*Mojsoski v. Ind. Wesleyan Univ.*,
    2022 WL 17338426 (N.D. Ind. Nov. 30, 2022)...............................15

*Monroe v. Columbia Coll. Chi.*,
    990 F.3d 1098 (7th Cir. 2021) ......................................................25

*Moxley v. Vernot*,
    555 F. Supp. 554 (S.D. Ohio 1982) ...............................................18

*Nartey v. Franciscan Health Hosp.*,
    2 F.4th 1020 (7th Cir. 2021) ........................................................19

*Newell v. Acadiana Plan. Comm'n Inc.*,
    637 F. Supp. 3d 419 (W.D. La. 2022)...........................................24

*Onyango v. Nick & Howard, LLC*,
    607 F. App'x 552 (7th Cir. 2015)..................................................27

*Payne v. Abbott Lab'ys*,
    999 F. Supp. 1145 (N.D. Ill. 1998) ..............................................26

*Powers v. Ohio*,
    499 U.S. 400 (1991)......................................................................13

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
    2 F.4th 1002 (7th Cir. 2021) .....................................................6, 7

*Riley v. Elkhart Cmty. Sch.*,
    829 F.3d 886 (7th Cir. 2016) ......................................................25

*Sanchez v. Tootsie Roll Indus., LLC*,
    2021 WL 4936240 (N.D. Ill. May 18, 2021)................................27

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ........................................................6

*Small v. Chao*,
   398 F.3d 894 (7th Cir. 2005) ...................................................................25

*Smith v. Metro. Sch. Dist. Perry Twp.*,
   128 F.3d 1014 (7th Cir. 1997) .................................................................15

*Students for Fair Admissions v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023) ...........................................................................20, 21

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .............................................................................6, 15

*Thanongsinh v. Bd. of Educ.*,
   462 F.3d 762 (7th Cir. 2006) ...................................................................15

*Training Inst., Inc. v. City of Chi.*,
   1996 WL 31180 (N.D. Ill. Jan. 24, 1996), *aff'd*, 937 F. Supp. 743 (N.D. Ill.
   1996) ...........................................................................................................8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...................................................................................7

*Veljkovic v. Bd. of Educ. of Chi.*,
   2020 WL 7626735 (N.D. Ill. Dec. 22, 2020) .....................................16, 17

*Yassan v. J.P. Morgan Chase & Co.*,
   708 F.3d 963 (7th Cir. 2013) .....................................................................6

**STATUTES**

20 U.S.C. § 1681(a) ........................................................................................22

42 U.S.C.
   § 1981(a) ...................................................................................................25
   § 2000d......................................................................................................16
   § 2000e-2 ..................................................................................................23

**RULES**

Fed. R. Evid. 201(b).......................................................................................11

**REGULATIONS**

34 C.F.R. § 100.3(c).......................................................................................18

## OTHER AUTHORITIES

*ABA-Approved Law Schools: Number of ABA-Approved Law Schools*, Am. Bar.
Ass'n,
https://www.americanbar.org/groups/legal_education/resources/aba_approved
_law_schools (last visited Oct. 24, 2024) ............................................................11

Northwestern University (Pritzker), U.S. News & World Report,
https://www.usnews.com/best-graduate-schools/top-law-
schools/northwestern-university-03050 (last visited Oct. 24, 2024) ......................................12

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss Plaintiff's Complaint, Dkt. 1.[1] Defendants' counsel Jude Volek held a videoconference with Plaintiff's counsel Jonathan Mitchell at approximately 2:00PM CDT on March 24, 2025 to meet and confer regarding this Motion. During that consultation, the parties made good faith attempts to resolve differences, but they were unable to reach an accord.

## INTRODUCTION

Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP") is an organization designed for litigation that has never brought a meritorious case. FASORP's prior attempts to sue universities on grounds similar to those pressed here were dismissed for lack of standing and failure to state a claim. *See FASORP v. N.Y.U. L. Rev.*, 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) (*NYU I*), *aff'd*, 11 F.4th 68 (2d Cir. 2021) (*NYU II*); *FASORP v. Harv. L. Rev. Ass'n*, 2019 WL 3754023 (D. Mass. Aug. 8, 2019). Hoping the third time will be the charm, FASORP sues Northwestern University and (gratuitously) the Dean of its Law School, three law professors, and even two law students, alleging violations of Titles VI, VII, and IX, and 42 U.S.C. § 1981.

The third time is not the charm. The bulk of FASORP's complaint is directed at maligning six Black law professors as unworthy of their appointments to the law faculty or unworthy to publish in the Northwestern University Law Review ("Law Review"). FASORP accuses some of these professors of plagiarism and denigrates the credentials of others. The grotesque premise of FASORP's suit is that, because those Black professors were hired or published while certain white

---

[1] As the Court well knows, Plaintiff brought suit against Defendants on these same facts in 2024, *see FASORP v. Northwestern University*, No. 24-cv-5558 (N.D. Ill. Jul. 2, 2024), only to dismiss it voluntarily in January 2025 and refile it moments later in this case. The docket in the 2024 case is cited as 24-Dkt. __, while the docket in this case is cited as Dkt. __.

male professors were not, the cause must be discrimination, not merit. Despite spilling much ink on attacking these Black professors, none of FASORP's plagiarism allegations or other vilifications advance its claims. The complaint should be dismissed.

FASORP's claims fail out of the gate for lack of standing. FASORP complains about the Law School's faculty-hiring process, but of the three anonymous white male law professors that FASORP identifies as members—upon which its associational standing rests—none is adequately alleged to have applied, or be "ready and able" to apply, to work at Northwestern or even to have the credentials necessary to do so. All FASORP alleges is that some (but not all) of those professors applied for entry-level positions (at undisclosed times), expressed "interest" in lateral appointments (in some undisclosed manner and again at undisclosed times) to one or more undisclosed Northwestern faculty member(s), and intend to express such vaguely defined interest again in the future. And FASORP fails to offer an adequate account of its members' qualifications, including basic details like where they currently teach. FASORP's vague and conclusory allegations are insufficient to establish Article III injury.

FASORP's claims regarding the Law Review fare no better. FASORP objects to the member and editor selection processes, but does not identify any FASORP member who is a current or former law student, much less one who unsuccessfully applied to the Law Review. FASORP also criticizes the article-selection process, but fails to provide sufficient detail regarding its members' submissions, such as when they were made or their subject matter. And FASORP's allegation that the Law Review rejected the "vast majority" of its three members' submissions implicitly concedes that at least one of their articles was accepted, undercutting the allegation that past rejections were based on race and showing that any risk of future rejection is speculative.

Setting aside standing, FASORP's claims fail on the merits. FASORP sues several individual defendants in their official capacities, even though it expressly conceded in the 2024 case that claims against those defendants should be dismissed. 2024-Dkt. 42 at 19 n.29. And FASORP reprises Title IX faculty-hiring claims, even though it expressly conceded in the 2024 case that those claims were barred by binding Seventh Circuit precedent. *Id*. at 30.

As for its remaining Title IX, Title VI, Title VII, and Section 1981 claims, FASORP's allegations are entirely conclusory and fail to state "factual content sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 775 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (7th Cir. 2019)). In fact, FASORP's allegations support the contrary inference. As to its faculty-hiring claims, for instance, the very statistics alleged in the Complaint show that white applicants for faculty positions received more offers than non-white applicants, and that white interviewees had an equal or higher offer rate than non-white interviewees, during the relevant time period. Dkt. 1 ¶ 48. And yet FASORP continues to groundlessly malign several Black professors and insist, without any factual support, that the process that led to *their* appointments must have been infected by discrimination.

Ultimately, this Court should see this case for what it is: a poorly conceived, highly offensive piece of propaganda brought to hurl improper attacks against Black faculty and to further FASORP's cause, not a serious legal document belonging in a court of law.

## BACKGROUND

### A.  The Parties

FASORP is a membership organization that advocates against "diversity considerations" in academia. Dkt. 1 ¶ 3. The complaint does not allege that FASORP has any members who are current students at, or alumni of, the Law School. Nor does the complaint identify any FASORP

3

member by name. It instead refers to three members by pseudonym—Individuals A, B, and C—and alleges that they are white, heterosexual, cisgender men who currently serve as tenured or tenure-track law professors at unnamed ABA-accredited law schools. *Id.* ¶¶ 105-121.

Northwestern University is a premier educational institution. *Id.* ¶ 4. Defendant Hari M. Osofsky is the Dean of the Law School, and Defendants Sarah Lawsky, Janice Nadler, and Daniel Rodriguez are professors (and Rodriguez a former dean) there. *Id.* ¶¶ 5-8. Defendants Dheven Unni and Jazmyne Denman are students at the Law School; FASORP alleges that Unni is the Law Review's editor-in-chief and Denman is its senior equity and inclusion editor. *Id.* ¶¶ 9-10.

### B.    Faculty Hiring At The Law School

FASORP describes the Law School's efforts to include more faculty candidates from underrepresented backgrounds in the pool of applicants as a "mandate to hire as many non-white and non-male faculty candidates as possible." *Id.* ¶ 11. FASORP acknowledges that the Law School interviews and extends faculty offers to white, heterosexual, cisgender men. *Id.* ¶¶ 47-50. Nevertheless, FASORP contends that the Law School "intentionally and consciously discriminate[s] in favor of black, Hispanic, Asian, female, homosexual, and transgender faculty candidates, and against white men who are heterosexual and non-transgender." *Id.* ¶ 12.

The complaint focuses largely on comparing the credentials of three white male professors whom the Law School did not hire with the credentials of five Black professors—four women and one man, although FASORP devotes most of its agita to the women—who were hired. *Id.* ¶¶ 15-44. Those three white male professors are *not* alleged to be Individuals A, B, and C, or even to be FASORP members, and FASORP acknowledges they did not "play[] any role in initiating this lawsuit." *Id.* ¶ 15 n.1. Regarding its actual members, FASORP alleges that Individuals A and C

previously applied for the Northwestern faculty, but does not say when and provides only the barest of details as to their qualifications. *Id.* ¶¶ 112, 113.

### C.     Law Review Member And Editor Selection

FASORP alleges that "[t]he student editors" of the Law Review rely on "discriminatory preferences … when selecting their members and editors." *Id.* ¶ 81. FASORP concedes that the Law Review's policy explicitly states that it "does not discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective." *Id.* ¶ 82. Nevertheless, FASORP alleges that the Law Review uses applicants' "personal statements" "to discriminate against white men and in favor of women, racial minorities, homosexuals, and transgender people," and requires its members to sign nondisclosure agreements regarding the member selection process to "prevent[] them from exposing the race and sex preferences that the Law Review uses when selecting its articles, editors, and members." *Id.* ¶¶ 82, 88. FASORP does not allege that any of its members applied, or are ready and able to apply, for Law Review membership or for any specific editorial position, or even that they are or were Northwestern law students.

### D.     Law Review Article Selection

FASORP claims that the Law Review discriminates on the basis of race, gender, gender identity, and sexual orientation in article selection. *Id.* ¶ 86. FASORP makes conclusory assertions that *some* of Individual A, B, and C's prior submissions were rejected on the basis of race, while implicitly conceding at least one of their articles was accepted. *Id.* ¶¶ 117, 119-121. The sole factual allegation FASORP offers to support its claim of discrimination in article selection is that the Law Review published a single issue that "consist[ed] only of articles written by black women." *Id.* ¶ 86. FASORP concedes that this issue was not expressly limited to articles written by Black women, but claims the Law Review nevertheless secretly applied discriminatory criteria.

*Id.* FASORP does not allege that Individual A, B, or C submitted articles for that issue. *Id.* ¶¶ 86, 117, 119-121. FASORP alleges that Individuals A, B, and C plan to submit articles in the future but does not provide details on their subject matter. *Id.* ¶¶ 119-121.

## LEGAL STANDARD

Rule 12(b)(1) challenges are addressed before Rule 12(b)(6) challenges. *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013). On a Rule 12(b)(1) motion, the plaintiff bears the burden of showing that subject matter jurisdiction exists. *See Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Where, as here, the defendants make a facial challenge to standing,[2] the "district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citations omitted).

To survive a Rule 12(b)(6) motion, the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a Rule 12(b)(6) motion, the court must determine (1) whether the complaint "describe[s] the claim in sufficient detail to give the defendant 'fair notice of what the … claim is and the grounds upon which it rests,'" and (2) whether the allegations "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "[A]ll statements of fact in the

---

[2] Because FASORP does not identify Individual A, B, or C by name, Defendants are limited to a facial challenge to its standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted). If this suit is not dismissed, Defendants will seek their names to bring a possible factual challenge to standing, which allows the court to "look beyond the pleadings" and consider extrinsic evidence. *Id.* (citation omitted); *see also Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021) (citing cases that read *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), "to expressly require names for associational standing on the pleadings").

complaint are taken as true and all reasonable inferences must be drawn in favor of [the plaintiff]." *Dixon v. Page*, 291 F.3d 485, 486-87 (7th Cir. 2002) (citation omitted).

## ARGUMENT

The complaint suffers from numerous flaws that independently warrant dismissal. FASORP lacks Article III standing, improperly directs claims against the individual defendants, and fails to allege facts sufficient to state a Title VI, Title IX, Title VII, or Section 1981 claim.

## I.       FASORP LACKS ARTICLE III STANDING.

To allege associational standing, FASORP must identify at least one member who has standing to sue in his own right. *See Prairie Rivers Network*, 2 F.4th at 1010. A member has standing if he can show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[s]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citations omitted). FASORP fails to make that showing.

### A.       FASORP Lacks Standing To Challenge The Law School's Faculty Hiring.

#### 1.       FASORP Lacks Standing For Its Entry-Level Hiring Claims.

FASORP lacks standing to seek prospective relief with respect to Northwestern's entry-level hiring process. In the 2024 case, FASORP clarified that its complaint there—which remains unchanged in this respect—sought only prospective relief. 24-Dkt. 42 at 7, 18. And FASORP's complaint in this case does not request any retrospective relief. Dkt. 1 ¶ 161. Accordingly, to challenge Northwestern's entry-level hiring process, FASORP must allege that it has members who are "able and ready" to apply for entry-level positions in the future. *Carney v. Adams*, 592 U.S. 53, 60-61 (2020). It does not and cannot. Because Individuals A, B, and C are already tenured or tenure track law professors, they are ineligible to apply for entry-level positions in the future. Dkt. 1 ¶¶ 114-116. Thus, FASORP lacks standing as to those claims.

### 2.  FASORP Lacks Standing For Its Lateral Hiring Claims.

FASORP likewise lacks standing to seek prospective relief as to Northwestern's lateral hiring process because it fails to adequately allege its members are ready and able to apply. Although FASORP makes conclusory assertions that its members are "ready and able" to apply, "it is not enough just to mouth those words," as "[w]hether a party is 'able and ready' is a legal conclusion that depends on the facts." *Earle Asphalt Co. v. Cnty. of Camden*, 2023 WL 8711815, at *1 (3d Cir. Dec. 18, 2023) (citation omitted). FASORP thus must allege facts that, if true, would show its members are "ready and able" to apply and face a "substantial risk" of discrimination. *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016); *see Carney*, 592 U.S. at 60-61 (allegation that plaintiff "wants to be, and would apply to be," a judge is insufficient for standing absent facts showing efforts to realize that desire); *Training Inst., Inc. v. City of Chicago*, 1996 WL 31180, at *1-2 (N.D. Ill. Jan. 24, 1996) (Lefkow, M.J.) (allegation that plaintiff was "ready and able to bid" on contracts is not enough absent facts showing the risk of harm is not speculative), *aff'd*, 937 F. Supp. 743 (N.D. Ill. 1996).

### a.  FASORP Fails To Allege Its Members Have Concrete Application Plans Or Are "Ready" To Apply As Lateral Hires.

Two courts have dismissed faculty-hiring claims brought by FASORP for failure to plausibly allege that its members were "ready" to apply, and a third court dismissed comparable claims brought by FASORP's counsel. This Court should do the same.

First, a Massachusetts district court rejected FASORP's argument that it had standing to challenge Harvard Law School's faculty hiring based on the allegation that "at least one member" had "applied for [an] entry-level or lateral teaching position[] at Harvard Law School and intend[ed] to do so again in the future." *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *6. As the court explained, that unadorned allegation lacked sufficient "concrete and particularized" facts to

8

support FASORP's claim that its members "imminently face[d]" an injury in fact. *Id.* at *7. "Without additional detail, there [was] no way to discern" whether FASORP's members had taken any concrete steps to apply "in the reasonably foreseeable future." *Id.*

Second, a New York district court similarly rejected FASORP's argument that it had standing to challenge NYU's faculty hiring because its members had previously applied and "remain[ed] potential candidates for faculty positions." *NYU I*, 2020 WL 1529311, at *6. As the court explained, that bare assertion—relying only on "speculation" about what might happen in the future and devoid of "'concrete facts' showing a substantial risk of harm"—was insufficient. *Id.* (citation omitted).

Third, the Fifth Circuit affirmed the dismissal of a complaint brought by FASORP's counsel against Texas A&M, which "alleg[ed] that applicants for professorships are discriminated against on the bases of race and sex." *Lowery v. Tex. A&M Univ.*, 2024 WL 4614714, at *1 (5th Cir. Oct. 30, 2024). Although the complaint alleged that the plaintiff was "'able and ready' to apply for lateral positions at the University," the Fifth Circuit found this assertion insufficient, as the plaintiff had "never submitted an application to substantiate his interest" and there was "little evidence" that doing so "would be a futile gesture." *Id.*

FASORP's allegations here fare no better. To start, FASORP fails to allege that Individual B ever applied, took any concrete steps toward applying, or even expressed an interest in a lateral position. And although FASORP alleges that Individuals A and C applied as entry-level candidates and "informed at least one person on Northwestern's law faculty of their interest in a lateral faculty appointment," Dkt. 1 ¶¶ 112-113, FASORP conspicuously fails to allege to whom or in what manner they expressed that interest, including whether they provided CVs, research agendas, writing samples, recommendations, or other materials to support their candidacies. That is not

enough to show they are "ready" to apply. *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) (plaintiff must "do more than show she had a general interest").

Further, as FASORP itself admits, lateral candidates must "convince intermediaries [on the faculty] to convince the appointments committee to recruit" them. Dkt. 1 ¶ 113. But FASORP does not allege that Individuals A and C actually asked, let alone convinced, any faculty member to intercede with the appointments committee. And FASORP's vague allegation that Individuals A and C plan to express "interest" in future years, *id.*, is likewise insufficient to show the "substantial risk" of harm necessary to establish Article III standing. *Hummel*, 817 F.3d at 1019. This allegation offers no details as to whom Individuals A and C plan to inform of their interest or how, including whether they plan to ask that their interest be communicated to the appointments committee. "Without any description of concrete plans[,] … FASORP's allegations exhibit the kind of some day intentions that cannot support a finding of [] actual or imminent injury." *NYU II*, 11 F.4th at 77 (citation and internal quotations omitted).

### b. FASORP Does Not Adequately Allege Its Members Are Qualified Or "Able" To Apply As Lateral Hires.

Individuals A, B, and C lack standing for the independent reason that they fail to plausibly allege they were qualified or "able" to teach at Northwestern. As the Seventh Circuit has explained, to plead standing, a plaintiff must allege he was "qualified for the position sought." *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996) (citation omitted);[3] *see also Houser v. Pritzker*, 28 F. Supp. 3d 222, 236-37 (S.D.N.Y. 2014) (collecting cases holding that "to establish an injury-in-fact," the "plaintiff must at least demonstrate that he met the minimum qualifications for the

---

[3] Although *Melendez* was a Title VII disparate-impact case, its discussion of qualifications is part of its Article III standing inquiry and therefore applicable to FASORP's standing to bring its faculty-hiring claims, which allege disparate treatment.

position ultimately denied") (citation omitted). "The basis for this qualification requirement is apparent. Absent direct evidence showing that a plaintiff was not hired or promoted because of a discriminatory employment practice, we assume that an unqualified plaintiff was not hired or promoted for the obvious reason—that he was unqualified." *Melendez*, 79 F.3d at 668; *see also Livingston v. City of Chicago*, 2024 WL 245214, at *10 (N.D. Ill. Jan. 22, 2024) (Ellis, J.).

FASORP fails to allege injury in fact because the complaint says little about Individual A, B, or C's qualifications. FASORP provides minimal information—that Individual A "published more than 15 scholarly articles and one book"; that Individual B "published more than 30 scholarly articles," has "20 years of experience," and once "served as a visiting professor at a top-five law school"; and that Individual C "published more than 50 scholarly articles or book chapters and one book," has "20 years of experience," and once "served as a visiting professor at a top-five law school." Dkt. 1 ¶¶ 114-116. These bare-bones descriptions of Individuals A, B, and C are insufficient to support a plausible allegation that they were "qualified for the position sought." *Melendez*, 79 F.3d at 668 (citation omitted). Indeed, FASORP does not allege their members' areas of expertise; where they earned their J.D.s (or Ph.D., if applicable); their academic record and class ranking; what law reviews they published in, how frequently they have been cited, or any other indication of scholarly impact; or whether they have been offered lateral positions at any peer schools. The complaint does not even allege where they currently teach, stating only that they teach at "ABA-accredited law school[s]." Dkt. 1 ¶¶ 105, 107, 109. But there are 197 ABA

accredited law schools,[4] and Northwestern is ranked ninth.[5] FASORP's allegations thus fall short of what is required to show they are qualified.

The absence of basic information regarding Individuals A, B, and C is particularly striking given that the complaint is premised on the baseless assertion that certain Black law professors Northwestern hired were unqualified given the ranking of the law school they attended and their academic and publication records. *Id.* ¶¶ 21, 23, 26, 34, 36, 37, 42, 44. Because FASORP's "threadbare" allegations are insufficient to establish an Article III injury for its lateral-hiring claim, that claim should be dismissed. *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *5-8 (dismissing FASORP's claims against Harvard Law Review because they alleged only that a member "intend[ed] to apply," but did not provide details on the member's "academic background," "test scores," or other qualifications).

### c.    FASORP Does Not Adequately Allege Substantial Risk of Discrimination

Finally, FASORP acknowledges that Northwestern has interviewed and hired white male professors, Dkt. 1 ¶¶ 47-50, underscoring that there is no race- or gender-based bar that establishes a risk of imminent harm of discrimination if FASORP members did, some day, decide to apply. Instead, FASORP asserts, without supporting factual allegations, that the Black professors its complaint attacks were hired because of their race (and sometimes their gender). *Id.* ¶¶ 21-44. These conclusory allegations do not establish a "substantial risk" that Individual A or C will be

---

[4] *ABA-Approved Law Schools: Number of ABA-Approved Law Schools*, Am. Bar. Ass'n, https://www.americanbar.org/groups/legal_education/resources/aba_approved_law_schools (last visited Apr. 4, 2025). The Court may take judicial notice of this fact because it is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[5] Northwestern University (Pritzker), U.S. News & World Report, https://www.usnews.com/best-graduate-schools/top-law-schools/northwestern-university-03050 (last visited Apr. 4, 2025). The Court may take judicial notice of this fact for the reasons stated above. *See supra* at 12 n.4.

discriminated against in the future. *See Doe v. N.Y.U.*, 2024 WL 2847368, at *5 (S.D.N.Y. May 30, 2024) (*NYU III*) ("[C]onsidering the lack of any well-pleaded allegations of a discriminatory selection process, [plaintiff's] purported injury likewise rests on nothing more than speculation and conjecture.").

**B.     FASORP Lacks Standing To Challenge The Law Review's Member And Editor Selection.**

FASORP lacks standing to challenge the Law Review's member and editor selection process because it does not allege that any of its members are or were students at Northwestern—much less that they "applied for, or were rejected from, the Law Review[]." *NYU II*, 11 F.4th at 77. That alone is sufficient to dismiss any claims regarding member selection. While FASORP points to one white male student whose Law Review application was rejected despite having high grades, that student is not alleged to be a FASORP member. Dkt. 1 ¶ 85. And FASORP does not identify any student—whether or not a FASORP member—who was denied a specific editorial position, such as Articles Editor, on allegedly discriminatory grounds.

FASORP nonetheless contends that it has standing because its members' "submissions [of articles] will be judged by students with lower academic credentials" given that the Law Review has "subordinate[d] academic merit" to "race and sex preferences." *Id.* ¶ 118. FASORP made this same dubious argument in its case against NYU, and both the district court and the Second Circuit rejected it. *See NYU II*, 11 F.4th at 73, 77; *NYU I*, 2020 WL 1529311, at *5-6. After all, "there is no legal right to have one's article reviewed or published by a student-run academic law journal," much less a right to have one's article reviewed by the "most 'capable' students." *NYU I*, 2020 WL 1529311, at *5-6; *see NYU II*, 11 F.4th at 77 (rejecting the same argument and finding FASORP's cited case, *Powers v. Ohio*, 499 U.S. 400 (1991), to be inapposite). Additionally, "it is a speculative leap to conclude that the Law Review is flouting its own facially neutral policy for

13

selecting new editors and instead impermissibly relying on the sex, gender, race, or sexuality of applicants." *NYU III* at *9 (dismissing claims against law review selection process for lack of standing because allegations were "no more than conjecture" and insufficient to establish requisite risk of injury). FASORP likewise lacks standing here.

### C.     FASORP Lacks Standing To Challenge The Law Review's Article Selection.

FASORP likewise lacks standing to challenge the Law Review's article-selection process. FASORP contends that Individuals A, B, and C submitted articles to the Law Review in the past and the "vast majority were rejected." Dkt. 1 ¶¶ 119-121. FASORP thus implicitly concedes that one or more of their articles were accepted. FASORP also alleges that the editors of Volume 118 published an issue "consist[ing] only of articles written by black women," *id.* ¶ 86, but does not allege that its members submitted articles to that issue and received rejections. As with its faculty-hiring claims, FASORP conceded in the 2024 case that it was not seeking retrospective relief, 24-Dkt. 42 at 7,18, and nothing in its latest complaint changes that. Looking prospectively, FASORP has not alleged sufficient facts to show an imminent risk of harm.

FASORP alleges that Individuals A, B, and C are preparing articles to submit between February 2025 and February 2026, but it provides no other information regarding these plans, such as the subject matter of the articles or range of law reviews to which they will be submitted. Dkt. 1 ¶¶ 119-121. Further, any assertion of a risk of imminent harm required for Article III standing is undermined by the fact that, while FASORP asserts that the Law Review "consistently gives discriminatory preferences," it offers no facts to support that conclusory allegation. *Id.* ¶ 102; *see NYU III*, 2024 WL 2847368, at *5 (allegation that NYU Law Review "give[s] preferential treatment" to certain groups and "intends to continue" doing so was too "conclusory" to support standing); *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 811 (7th Cir. 2021)

(allegations of sex discrimination were "too vague and conclusory" because "there [were] insufficient facts to 'draw [a] reasonable inference that the defendant is liable'") (second alteration in original) (citation omitted). And the facts FASORP does allege support the opposite inference: the Law Review has a nondiscrimination policy and sought legal advice on "compliance with all applicable law." Dkt. 1 ¶¶ 82, 90; *see NYU II*, 11 F.4th at 76 (dismissal of FASORP's challenge to article-selection process); *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *7 (same).

* * *

Finally, while FASORP asserts that Individuals A, B, and C are a "representative sample" and it has other injured members, Dkt. 1 ¶ 123, it cannot rely on unidentified members for standing. *See Summers*, 555 U.S. at 498 (requiring "specific allegations establishing that at least one identified member had suffered or would suffer harm").

## II.  FASORP FAILS TO STATE A CLAIM ON THE MERITS.

Even if FASORP had standing, its claims should be dismissed on the merits.

### A.  The Claims Against The Individual Defendants Should Be Dismissed.

As FASORP conceded in the 2024 case—in a concession it seems to have forgotten—its claims against individual defendants, brought against them solely in their official capacities, should be dismissed. 24-Dkt. 42 at 19 n.29. That is so for two reasons. First, they are redundant of the claims against Northwestern. *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 771 & n.7 (7th Cir. 2006) (affirming dismissal of Title VII claim brought against individual in his official capacity as duplicative of claim against the school district employer); *Mojsoski v. Ind. Wesleyan Univ.*, 2022 WL 17338426, at *11 (N.D. Ind. Nov. 30, 2022). Second, because Title VI and Title IX "only protect[] against discrimination" by federally-funded entities, Title VI and Title IX claims "can only be brought against a grant recipient and not an individual." *Smith v. Metro. Sch. Dist. Perry*

*Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997); *see C.S. v. Couch*, 843 F. Supp. 2d 894, 905 n.14 (N.D. Ind. 2011). This Court should therefore dismiss the claims against the individual defendants.

### B.    FASORP Fails To State A Title VI Claim.

Title VI prohibits racial discrimination in federally-funded programs. *See* 42 U.S.C. § 2000d. Seventh Circuit precedent prohibits FASORP from bringing an employment claim under Title VI, and its conclusory allegations regarding race-based discrimination in faculty hiring and Law Review member, editor, and article selection are insufficient to state a viable claim.

### 1.    FASORP Cannot Bring An Employment Claim Under Title VI.

FASORP's faculty-hiring claim fails because FASORP falls outside Title VI's zone of interests and Title VI does not provide a remedy for employment discrimination here.

### a.    FASORP Falls Outside Title VI's Zone of Interests.

FASORP falls outside the zone of interests that Title VI protects. "[T]o bring a private action under Title VI[,] 'the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program.'" *Doe v. St. Joseph's Hosp. of Ft. Wayne*, 788 F.2d 411, 418-19 (7th Cir. 1986) (citation omitted), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996). Courts routinely dismiss Title VI claims brought by plaintiffs who were neither intended beneficiaries of, nor participants in, a federally-funded program. *See Veljkovic v. Bd. of Educ. of Chi.*, 2020 WL 7626735, at *4 (N.D. Ill. Dec. 22, 2020); *Agbefe v. Bd. of Educ. of Chi.*, 538 F. Supp. 3d 833, 839 (N.D. Ill. 2021).

FASORP asserts that its members are intended beneficiaries of, and participants in, a federally-funded program because they are faculty members at *other* universities that receive federal research grants. Dkt. 1 ¶¶ 130, 132. Even assuming (incorrectly) that those facts would allow FASORP to bring Title VI claims against *those* universities, it does not suffice to sue *Northwestern*—the entity that supposedly is discriminating against FASORP's members. *See*

16

*Ahern v. Bd. of Educ. of Chi.*, 133 F.3d 975, 976 (7th Cir. 1998) (considering whether *the defendant* received federal financial assistance). To conclude otherwise would subject any entity to suit under Title VI whenever someone happens to apply to that entity *from* any institution receiving federal funds.

Alternatively, FASORP contends that its members are "applicants" for a federally-funded program because they applied to Northwestern's faculty. Dkt. 1 ¶ 131. As an initial matter, FASORP never actually alleges that its members "applied" for a lateral position; it alleges only that Individuals A and C told someone at the Law School that they were interested in a lateral position. *See supra* at 9-10. Regardless, applying for a faculty position at a federally-funded institution is not enough to bring a plaintiff within the zone of interests necessary to bring a Title VI claim. *See Doe*, 788 F.2d at 420 (dismissing Title VI employment-related claim because physician-employee was not an applicant to or intended beneficiary of any federally-funded program); *Miller v. Phelan*, 845 F. Supp. 1201, 1207 (N.D. Ill. 1993) (rejecting Title VI claim of applicant to municipal transportation authority board because "the most likely beneficiaries [of federal funding] … are the riders"); *Veljkovic*, 2020 WL 7626735, at *3-4. If merely applying for a position at a university that receives federal funds could bring a plaintiff within Title VI's zone of interests, then every applicant for every university job could sue. That is not the law.

### b.    Title VI Does Not Cover FASORP's Employment Claim.

Even if FASORP members fell within Title VI's zone of interests, its hiring claim fails for an independent reason: "Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes

discrimination against the primary beneficiaries of the federal aid." *Ahern*, 133 F.3d at 978 (citation omitted). Neither exception applies here.

*First*, FASORP does not plausibly allege that the primary objective of Northwestern's federal funding is to provide faculty employment. Without identifying a single specific grant received by Northwestern, FASORP asserts that the primary purpose of federal research grants generally is "to employ university faculty." Dkt. 1 ¶ 134. Courts consistently reject this argument. *See, e.g., Meyerson v. State of Ariz.*, 709 F.2d 1235, 1237 (9th Cir. 1983) ("[P]roviding employment was not one of the primary objectives of the instructional and research grants made by the government to the University."), *judgment vacated*, 465 U.S. 1095 (1984);[6] *Chuang v. Regents of Univ. of Cal.*, 1998 WL 1671745, at *14 (E.D. Cal. Oct. 30, 1998) (same, noting that many professors "already have fully-funded teaching or research positions independent of any federal grants"), *rev'd on other grounds*, *Chuang v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d 1115 (9th Cir. 2000); *Moxley v. Vernot*, 555 F. Supp. 554, 559-60 (S.D. Ohio 1982) (purpose of federal funding was to support research on toxic gases, not to provide employment). As the Ninth Circuit explained, the primary purpose of such grants is to "further scientific research and assist in the training" of students. *Meyerson*, 709 F.2d at 1237. Any "minimal and incidental effect on employment" is not enough to satisfy the "primary objective" requirement; if it were, almost any federal assistance would qualify since "almost all federal assistance results in an increase of at least some employment." *Id.*; *see also* 34 C.F.R. § 100.3(c) (narrow list of statutes with primary

---

[6] The Ninth Circuit's decision in *Meyerson* was vacated and remanded in light of *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 631-37 (1984), which held that plaintiffs could bring Rehabilitation Act claims for employment discrimination without showing (unlike with Title VI) that the federal funding's primary purpose was to provide employment. *Consolidated Rail* did not call into question *Meyerson*'s reasoning that providing employment is not the primary purpose of federal research grants.

purpose of providing employment). For these reasons, FASORP fails to plausibly allege that Northwestern received aid for which providing employment is a primary objective.

*Second*, FASORP does not allege that the Law School's hiring practices have had a discriminatory effect on the primary beneficiaries of the federal aid—its students. Caselaw makes clear that professors are not the intended beneficiaries of these grants, let alone the primary beneficiaries. *See supra* at 16 (collecting cases). The *primary* beneficiary is the person or group who benefits *most* from the federal aid, which are students. *See Gress v. RTA*, 2018 WL 3869962, at \*2-3 (N.D. Ill. Aug. 15, 2018) (riders, not bus drivers, were primary beneficiaries of transportation funding). FASORP suggests that the Law School's hiring practices have resulted in its hiring "less capable" professors, Dkt. 1 ¶ 17; *see id.* ¶¶ 23, 36, 42, 44, but it does not allege that the presence of those supposedly less capable professors causes discrimination against students based on their race—an argument that would fail in any event. *See Cieslik v. Bd. of Educ. of Chi.*, 2021 WL 1172575, at \*3 (N.D. Ill. Mar. 29, 2021) (rejecting plaintiffs' argument that Title VI applied to employment discrimination claims based on allegation that Chicago students received an "inferior education" due to discrimination against teachers because, even if there were such discrimination, that "chain of reasoning does not explain how students would be discriminated against").

Finally, even if FASORP could bring a Title VI claim, the faculty-hiring allegations in the complaint are too nonspecific and conclusory to state a claim for the reasons discussed *supra* at 8-12. *See Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020, 1023 (7th Cir. 2021) (affirming dismissal of Title VI claim due to conclusory allegations of discrimination).

19

### 2. FASORP Alleges Insufficient Facts To Support A Title VI Claim Regarding Law Review Member And Editor Selection.

FASORP does not identify any discriminatory policy in the selection of Law Review members or editors. FASORP concedes that the Law Review represents that it "does not discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective." Dkt. 1 ¶ 82. It further concedes that the Law Review has sought legal guidance and "'repeatedly confirmed' the Law Review's 'compliance with all applicable law.'" *Id.* ¶ 90. Nevertheless, FASORP contends that the Law Review uses "personal statements" to select new members based on their protected characteristics. *Id.* ¶¶ 83-84. But FASORP does not plead sufficient specific facts necessary to support this conclusory assertion—a flaw that recently led to the dismissal of a materially identical claim against another law review. *See NYU III*, 2024 WL 2847368, at *6. As that court explained, "[a]lthough [plaintiff] alleges that the Law Review 'is using … statements of interest and résumés to give preferential treatment to [select minority groups]' … he offers no factual allegations in support of that assertion." *Id.* (third alteration in original). The same is true here: FASORP does not back up its conclusory assertions with specific allegations.

Indeed, the closest FASORP comes to a specific allegation is that, in 2021, the Law Review rejected "a white male student who had a first-year grade point average of over 4.0, while accepting female and minority students with much lower first-year grades." Dkt. 1 ¶ 85. That allegation does not support a discrimination claim. As FASORP admits, the Law Review selects new members based not just on grades, but also performance on a writing competition and personal statements. *Id.* ¶¶ 82-83. And FASORP does not allege that the white male student performed better, or even the same as, his female and minority colleagues on the writing competition. Thus, FASORP does not plausibly allege he was rejected based on race.

Moreover, the mere fact that the Law Review solicits personal statements does not itself suffice to state a discrimination claim. In *Students for Fair Admissions v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), the Supreme Court made clear that the law does not "prohibit[] universities from considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise," so long as "the student [is] treated based on his or her experiences as an individual." *Id.* at 230-31. If allegations attacking the use of personal statements could predicate Title VI claims, then every federally-funded program that uses personal statements and has expressed an interest in diversity "could be subjected to the costly and burdensome prospect of discovery." *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *8 n.16 (cleaned up) (citations and internal quotation omitted). The law does not permit, let alone demand, that result.

Finally, FASORP contends without factual support that the Law Review's non-disclosure agreements ("NDAs") "prevent[] [members] from exposing the race and sex preferences that the Law Review uses." Dkt. 1 ¶ 88. FASORP adds that the Law Review's alleged consultations with legal counsel somehow imply that the Law Review was actually seeking to violate the law. *Id.* ¶ 90. Those conclusory allegations—grounded in no facts whatsoever—do not come close to establishing any discriminatory conduct by the Law Review.

### 3. FASORP Alleges Insufficient Facts To Support A Title VI Claim Regarding Article Selection.

FASORP's conclusory allegations regarding race discrimination in article selection are likewise insufficient to state a Title VI claim. FASORP does not allege that the Law Review rejected any specific article based on the author's race, and as FASORP concedes, the Law Review expressly represents that it "does not discriminate on the basis of race." *Id.* ¶ 85. FASORP's conclusory charge—unsupported by any facts—that the Law Review "gives discriminatory

21

preferences to articles written by women, racial minorities, homosexuals, or transgender people," *id.* ¶ 102—is insufficient to state a claim. *See NYU I*, 2020 WL 1529311, at *7 ("FASORP fails to proffer any factual allegation describing the Law Review's article-selection process other than alleging that the Law Review receives background information of the authors and asserting in a conclusory way that the process is discriminatory"); *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *9 ("The complete absence of 'factual material' … is fatal to [FASORP's] claim of discriminatory article selection.").

Again, FASORP makes only one even remotely specific allegation: that in the 2023-2024 academic year, the editors of Volume 118 published an issue "consist[ing] only of articles written by black women." Dkt. 1 ¶ 86. But FASORP does not allege that the Law Review rejected any otherwise publication-worthy articles by authors of other races; to the contrary, FASORP admits that the Law Review did not announce a policy of selecting only articles written by Black women for that issue. *Id.* Nor does FASORP allege that any of its members submitted articles for this issue. *See supra* at 14-15. And FASORP's plagiarism allegations regarding an accepted article, Dkt. 1 ¶¶ 91-101, are irrelevant, as they do nothing to demonstrate that the articles in Volume 118 were chosen as a result of discrimination. Absent any specific allegation suggesting the Law Review denied publication opportunities based on race, FASORP fails to state a Title VI claim.

### C.     FASORP Fails To State A Title IX Claim.

Title IX prohibits discrimination on the basis of sex in federally-funded programs. *See* 20 U.S.C. § 1681(a). FASORP's Title IX faculty-hiring claim should be dismissed because it is

precluded by Title VII, and FASORP's conclusory allegations regarding faculty hiring and Law Review member, editor, and article selection fail to state a Title IX claim.

### 1. Title VII Precludes FASORP's Title IX Employment Claim.

As FASORP previously "agree[d,] … its faculty-hiring claims cannot proceed under Title IX at this time given the holding of *Waid* [*v. Merrill Area Public Schools*, 91 F.3d 857, 861-63 (7th Cir. 1996)]." 24-Dkt. 42 at 30; *see also Brown v. Ill. Dep't of Hum. Servs.*, 717 F. App'x 623, 625-26 (7th Cir. 2018) ("all employment-discrimination claims must be brought under Title VII") (citations omitted); *Agbefe*, 538 F. Supp. 3d at 840. And even if Seventh Circuit precedent did not bar these claims, the complaint's faculty-hiring allegations are too vague and conclusory to state a claim for the reasons discussed *supra* at 8-12. Thus, this claim should be dismissed.

### 2. FASORP Alleges Insufficient Facts To Support A Claim of Gender Discrimination In Law Review Member, Editor, And Article Selection.

As with its Title VI claim, FASORP's conclusory allegations regarding discrimination in the selection of Law Review members, editors, and articles do not suffice to state a Title IX claim. The Seventh Circuit has repeatedly affirmed dismissal of Title IX claims that are "too vague and conclusory." *Jauquet*, 996 F.3d at 811 (citation omitted); *see also Doe v. Colum. Coll. Chi.*, 933 F.3d 849. 854 (7th Cir. 2019); *Gabrielle M. v. Park Forest-Chi. Heights Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). As explained above, FASORP's vague assertions about an NDA requirement, a single male student who is not a party, and a single Law Review issue to which none of its members submitted articles are insufficient to show sex discrimination. *See supra* at 20-22. These claims should be dismissed.

### D. FASORP Fails To State A Title VII Faculty-Hiring Claim Against Any Defendant.

Title VII makes it unlawful for an employer to "fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual … because of such individual's

23

race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To bring a Title VII failure-to-hire claim based on indirect evidence of discrimination, a plaintiff must plead "(1) he is a member of a protected class; (2) he applied for, and was qualified for, an open position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained vacant." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002) (citation omitted).

As to the second element, FASORP fails to adequately allege that Individual A, B, or C—or any other FASORP member—applied or is ready and able to apply for any open position. *See supra* at 8-12. Courts routinely dismiss Title VII claims for failure to meet this pleading requirement. *See Holder v. Old Ben Coal Co.*, 618 F.2d 1198, 1198 (7th Cir. 1980) (affirming dismissal of Title VII claim because plaintiff "failed to prove that she was qualified for any employment position at the time she was rejected"); *Newell v. Acadiana Plan. Comm'n Inc.*, 637 F. Supp. 3d 419 (W.D. La. 2022) (dismissing Title VII claim for failing to allege plaintiff applied for the position). Absent adequate allegations regarding FASORP members applying and being rejected despite being qualified, or being ready and able to apply, FASORP cannot show that any member was not hired, or would not be hired, due to race—especially when the Law School has interviewed, extended offers to, and hired white male candidates over the years in question. Dkt. 1 ¶¶ 47-50.

Although the complaint states that Individuals A and C (but not B) applied, those allegations are insufficient to establish standing for the reasons described above. *See supra* at 8-10. Even if FASORP had standing to challenge the Law School's entry-level hiring process—which it does not—FASORP fails to allege when or whether those applications overlapped with those of the Black professors identified in the complaint. FASORP's claims based on entry-level

applications are also likely time-barred.[7] As to the lateral faculty-hiring claim, that Individuals A and C expressed "interest" in lateral positions to unnamed faculty at some unspecified time—or intend to do so at some unspecified future time—do not suffice because these allegations are too vague to demonstrate any past or imminent harm.

Similarly, FASORP does not plausibly allege that any of its members are qualified. *See supra* at 10-12 (summarizing missing information regarding qualifications). Courts routinely dismiss Title VII claims that fail to adequately allege the plaintiff's qualifications. *See Holder*, 618 F.2d at 1203 (affirming dismissal of Title VII claims because plaintiff "failed to prove that she was qualified for any employment position at the time she was rejected"); *Burton v. Great W. Steel Co.*, 833 F. Supp. 1266 (N.D. Ill. 1993) (dismissing Title VII claim for failing to allege plaintiff was qualified for the position). The Court should do the same here.[8]

### E. FASORP Fails To State A Section 1981 Claim.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976). FASORP fails to state a Section 1981 claim.

---

[7] FASORP alleges, for instance, that Individual C has been teaching for 20 years, Dkt. 1 ¶¶ 115-116, so any entry-level application by him falls well outside Section 1981's four-year statute of limitations. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016); *see also Monroe v. Colum. Coll. Chi.*, 990 F.3d 1098, 1099-1100 (7th Cir. 2021) (two-year statute of limitations for Title VI); *Small v. Chao*, 398 F.3d 894, 898-99 (7th Cir. 2005) (same for Title IX).

[8] To the extent that FASORP is asserting a "pattern or practice" of discrimination, "statistical 'evidence of a pattern or practice'" can support an "individual" claim of discrimination, "as opposed to a class action," only when it is "coupled with 'evidence of specific discrimination against the plaintiff [himself].'" *Barnes-Staples v. Carnahan*, 88 F.4th 712, 719 (7th Cir. 2023) (citation omitted). Thus, FASORP cannot rely on statistics to avoid alleging the application and qualification requirements applicable to its individual discrimination claims. And as noted below at 27-28, the statistics do not show discrimination against white applicants, who received a majority of all offers and at least half of offers each year.

### 1. FASORP Fails To Adequately Allege A Section 1981 Discrimination Claim Regarding Faculty Hiring.

"The legal analysis for discrimination claims under Title VII and § 1981 is largely identical," with the exception of the more stringent but-for causation requirement under Section 1981. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citation omitted). As noted above, FASORP fails to adequately allege that Individual A, B, or C—or any other FASORP member—applied or was qualified for any open position, or is ready and able to apply. *See supra* at 8-12. In addition, FASORP fails to plausibly allege that race was the but-for cause of its members not being hired—as required under Section 1981.

### a. FASORP Does Not Plausibly Allege That Any Member Applied To, Or Was Qualified For, Any Position At The Law School.

FASORP's Section 1981 hiring claim fails because, as shown above, it does not adequately allege that any of its members applied to and were qualified for a Law School position, or are ready and able to apply. *See supra* at 8-12 (discussing FASORP's failure to adequately allege application and qualification). As such, this Court should dismiss FASORP's Section 1981 claim. *See Payne v. Abbott Lab'ys*, 999 F. Supp. 1145, 1152 (N.D. Ill. 1998) (dismissing claim for failure to allege "specific instances or facts regarding when plaintiffs applied for promotions"); *Brown v. Ferrara Candy Co.*, 2023 WL 6519973, at *9 (N.D. Ill. Oct. 5, 2023) (plaintiff "d[id] not elaborate on his qualifications for the job"); *Ivens v. GK N. Childcare Corp.*, 2022 WL 602913, at *2 (N.D. Ind. Mar. 1, 2022) (same); *Barnes v. Solo Cup Co.*, 2013 WL 2156054, at *3 (N.D. Ill. May 16, 2013) (plaintiff failed to allege he was "similarly situated to, or more qualified than," an employee of a

different race who was promoted); *Jones v. Michael Reese Hosp.*, 1991 WL 105583, at *3 (N.D. Ill. June 7, 1991) (plaintiff "fail[ed] to allege that she was qualified" for the job).

### b. FASORP Fails To Adequately Allege But-For Causation.

FASORP also fails to adequately allege but-for causation. A Section 1981 plaintiff must "plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see Sanchez v. Tootsie Roll Indus., LLC*, 2021 WL 4936240, at *5 (N.D. Ill. May 18, 2021) ("Even at the pleading stage, the causation requirement is robust."). To satisfy Section 1981's but-for causation requirement, a plaintiff must plausibly allege the defendant would have made a different decision had the plaintiff been a different race. *See Comcast*, 589 U.S. at 336-37.

FASORP does not plead *any* facts suggesting that Individual A, B, or C would have been hired but for their race. As noted above, FASORP fails to adequately allege when or how Individuals A and C actually applied. *See supra* at 8-10. Even if it had, their applications could have been denied for any number of legitimate reasons, including that they did not teach in a subject area where faculty were needed, did not teach at a sufficiently highly-ranked school, or did not otherwise have an adequate publication or academic record. FASORP thus cannot satisfy Section 1981's but-for causation requirement. *See Onyango v. Nick & Howard, LLC*, 607 F. App'x 552, 555 (7th Cir. 2015) (rejecting Section 1981 claim because plaintiff failed to "plausibly allege" that defendant's action and plaintiff's injury were "causally connected"); *Sanchez*, 2021 WL 4936240, at *6 (dismissing Section 1981 claim for failure to allege race was the but-for cause of termination). Nor do FASORP's irrelevant charges of plagiarism against one newly-hired Black professor somehow help it establish that race was the reason its members were not hired.

Finally, FASORP points to charts allegedly showing "how Northwestern has conducted its interviews and hiring decisions over the last three academic years," ostensibly to establish but-for

causation through statistics. Dkt. 1 ¶ 48. In doing so, FASORP pleads itself out of court, as its statistics discredit any suggestion of but-for causation. *See id.* (showing white applicants received a majority of all offers and at least half of offers each year, and that white interviewees had an equal or higher offer rate than non-white interviewees). And no matter how they are sliced, FASORP's statistics fall far short of being "of a level that makes other plausible non-discriminatory explanations very unlikely." *Alameda v. Ass'n of Soc. Work Bds.*, 2024 WL 4302389, at *5 (S.D.N.Y. Sept. 25, 2024) (dismissing Section 1981 claim grounded in statistics for failing "to plausibly plead the intentional discrimination necessary") (internal citations and quotation omitted).

### 2. FASORP Alleges Insufficient Facts To Support A Section 1981 Discrimination Claim Regarding Law Review Member, Editor, Or Article Selection.

FASORP fails to state a Section 1981 claim as to the selection of student members and editors of the Law Review. *First*, FASORP alleges no contractual relationship between the student members and the Law Review. "Any claim brought under § 1981 … must initially identify an impaired 'contractual relationship,' [] under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (citations omitted). Because FASORP fails to do so, its claim should be dismissed. *See Collier v. Rodriguez*, 1996 WL 535326, at *3 (N.D. Ill. Sept. 18, 1996) (dismissing Section 1981 claim because "no contracts are at issue here"). *Second*, even if FASORP identified a contractual relationship, the Section 1981 claim still fails, as it does not sufficiently allege race was the but-for cause of any student's rejection from the Law Review, let alone a FASORP member's rejection. *See Comcast*, 589 U.S. at 341; *supra* at 13-14.

Finally, FASORP's conclusory allegations regarding discrimination in article selection are insufficient to state a Section 1981 claim. FASORP does not allege that the Law Review imposes any race-based qualifications on articles. As noted above, the most FASORP alleges is that

28

Volume 118 had an issue "consist[ing] only of articles written by black women." Dkt. 1 ¶ 86. But FASORP does not adequately allege that the Law Review rejected any publication-worthy articles by authors of other races for this issue—or any other issue—let alone that FASORP members were deprived of any opportunity to enter a contract with the Law Review based on their race.

## CONCLUSION

The complaint lacks merit. It serves only as a vehicle to baselessly malign professors due to their race and gender and to attempt to advance FASORP's political agenda. Because the law requires more to maintain an action in federal court, the complaint should be dismissed.

Dated: April 4, 2025                          Respectfully submitted,


By: */s/ Danielle Conley*
_____

Danielle Conley (*admitted pro hac vice*)
Jude Volek (*admitted pro hac vice*)
Christine C. Smith (*admitted pro hac vice*)
Jasmine D. Benjamin (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Phone: (202) 637-2200
Facsimile: (202) 637-2201
danielle.conley@lw.com
jude.volek@lw.com
christine.smith@lw.com
jasmine.benjamin@lw.com

Sean Berkowitz (ARDC No. 6209701)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611-3695
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
sean.berkowitz@lw.com

*Counsel for Defendants Northwestern University, Hari Osofsky, Sarah Lawsky, Janice Nadler, Daniel Rodriguez, Dheven Unni, and Jazmyne Denman*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2025, I filed the foregoing with the Clerk of Court by using

the CM/ECF system and sent via electronic transmission to all parties of record.


/s/ *Danielle Conley*
Danielle Conley (*admitted pro hac vice*)